# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **LAQUANA WATSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** _____ |
| | ) | |
| **INSTANT BRANDS LLC**, | ) | **JURY TRIAL DEMANDED** |
| **INSTANT BRANDS, INC. and** | ) | |
| **CORELLE BRANDS, LLC,** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |
| | ) | |

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff, **LAQUANA WATSON**, (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **COHEN & MALAD, LLP** hereby submits the following Complaint and Demand for Jury Trial against I**NSTANT BRANDS, LLC.** **INSTANT BRANDS, INC. and CORELLE BRANDS, LLC** (hereafter referred to as "Instant Brands Defendants" or "Defendants") alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1.      Defendants design, manufacture, market, import, distributes and sell a wide-range of consumer kitchen products, including the subject "Instant Pot Duo SV Pressure Cooker," which specifically includes the Duo SV 60 (referred to hereafter as "pressure cooker(s)" or "Subject Pressure Cooker") that is at issue in this case.

1

2.      Defendants touts the "safety"[1] of its pressure cookers, and states that they cannot be opened while in use. Despite Defendants' claims of "safety," it designed, manufactured, marketed, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

3.      Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit.  When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families, and other bystanders. The Plaintiff in this case sustained serious and substantial bodily injuries and damages when the lid of the pressure cooker was able to be rotated, opened, or removed while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages.

4.      Defendants knew or should have known of these defects, but nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

5.      Defendants ignored and/or concealed its knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

---

[1] *See generally*, Instant Pot DUO User Manual.  A copy of the User Manual is attached hereto as "Exhibit A."

6.      As a direct and proximate result of Defendants' conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF LAQUANA WATSON

7.      Plaintiff is a resident and citizen of the City of Indianapolis, County of Marion, State of Indiana.

8.      On or about October 28, 2021, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed us of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.  The incident occurred as a result of the failure of the pressure cooker's supposed "Built-In Safety Features," which purport to keep the consumer safe while using the pressure cooker.  In addition, the incident occurred as a result of Defendants' failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## INSTANT BRANDS DEFENDANTS

9.      Defendants designed, manufactured, marketed, imported, distributed, and sold a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

10.      Defendants boast that "cooking with Instant Brands is everyday magic,"[2] and that their products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[3]

---

[2] *See* https://www.instanthome.com/about-us
[3] *Id.*

3

11. Instant Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515. Instant Brands, LLC is therefore a citizen of Illinois.

12. Upon information and belief, Instant Brands, Inc. is a Delaware Corporation with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515. Instant Brands, Inc. is therefore a citizen of Illinois and Delaware.

13. Corelle Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515. Corelle Brands, LLC is therefore a citizen of Illinois.

14. On June 12, 2023 Defendants commenced a Chapter 11 proceeding. See In re Instant Brands Acquisition Holdings Inc., et al. (Bankr. S.D. Tex. Case No. 23-90716) (the "Bankruptcy Case"). On February 23, 2024 the Bankruptcy Court issued a Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis at Dkt. No. 1146. Exhibit A to the Order, Article VII, section L states the following:

> Nothing herein (including Articles XI.B and XI.G) shall preclude Holders of Product Liability Claims from (1) naming a Reorganized Debtor as a nominal Defendants in an action brought in respect of a Product Liability Claim, thereby allowing, and solely to the extent required to enable, the named Reorganized Debtor to tender the applicable Product Liability Claim to the applicable Third-Party Indemnitor under all available and applicable Third-Party Indemnifications (as set forth in Article II.D), if any, as will be adjudicated by the Bankruptcy Court in connection with Confirmation unless otherwise consensually settled or resolved, or (2) otherwise pursuing their Claims against Insurers under all available and applicable Insurance Contracts; provided, that none of the Reorganized Debtors shall have any obligation to participate or assist in any action brought in pursuit of any Product Liability Claims or have any liability with respect to any Product Liability Claims. For the avoidance of doubt, all liabilities of the Debtors, the Debtors' Estates, or the Reorganized Debtors for any Product Liability Claims shall be discharged on the Effective Date in accordance with the Plan. To ease the burdens on

4

the Reorganized Debtors, all Holders of Product Liability Claims may use any discovery previously taken in connection with any previous Product Liability Claim against the Debtors, and both the Debtors and the Reorganized Debtors waive any prior protective orders to the extent necessary to effectuate this paragraph (however, any prior confidentiality designations are expressly preserved and shall remain in effect). To the extent that a Product Liability Claim is not satisfied by an Insurer or Third-Party Indemnitor, the Holder will be permitted to assert such Excess Product Liability Claim as a General Unsecured Claim (subject to prior compliance with the Bar Date Order). The Distribution Agent, the Litigation Trustee, or any Holder of a Product Liability Claim may seek estimation of any expected Excess Product Liability Claim, including for purposes of establishing an appropriate reserve in connection with any distributions from the Litigation Trust.

15.     This proceeding was initially commenced in the Bankruptcy Case by the filing of a Proof of Claim on  October 5, 2023 and October 12, 2023 [Claim No. 0000010397 and 0000010733], respectively.  This action is being initiated now in this District Court solely to ensure satisfaction of the Plaintiff's applicable statute of limitation, but remains subject to the above cited Order in the Bankruptcy Case, and thus this action should be stayed until the conditions in paragraph 31(a) of such Order are satisfied.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

18.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of Indiana and intentionally availed itself of the markets within Indiana through the promotion, sale, marketing, and distribution of their products.

## FACTUAL BACKGROUND

5

19.    Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

20.    Defendants aggressively warrant, market, advertise, and sell pressure cookers as "simple-to-use, versatile and convenient"[4] and repeatedly boasts about its pressure cookers' purported "proven safety features."[5]

21.    For instance, the Defendants claim that the pressure cookers include a "Safety Lid Lock" which purportedly automatically locks the lid when the unit is pressurized "to prevent opening the cooker."[6]

22.    To further propagate its message, Defendants have used, and continue to utilize, numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers.  For example, the following can be found on Defendants' YouTube webpage entitled "Getting to Know Your Knew Instant Pot IP-DUO":

    a.    "The first thing you need to know about your IP-DUO is that *you don't need to be afraid of it*, as many people are afraid of stovetop pressure cookers."[7]

    b.    "With 10 safety features built in, you can use your Instant Pot with confidence, *knowing that it is not going to explode*."[8]

---

[4] *See* https://www.instanthome.com/product/instant-pot/duo-plus/6-quart-multi-use-pressure-cooker-v3
[5] *Id.*
[6] *See* "10 Safety Mechanisms- DUO, DUO PLUS, LUX, NOVA PLUS AND VIVA," https://www.instanthome.com/support/instant/resources
[7] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42-0:46
[8] *Id*. at 0:47 – 0:55.

c.     "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use."[9]

23.    In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[10] boasts of the pressure cooker's "10 safety features," stating that this "new model detects the position of the lid" and "once the lid is locked, and the contents are under pressure, *there's no way to open the pressure cooker*."[11]

24.    According to the User's Manual accompanying each individual unit sold, the pressure cookers possess a "Float Valve" which pops up and locks the lid of the cooker in place while the unit is pressurized, stating that "[a]s a safety feature, until the float valve drops down the lid is locked and cannot be opened,"[12] misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use.

25.    By reason of the forgoing acts or omissions, the above-named Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

26.    Plaintiff used the pressure cooker for its intended purpose of preparing meals for herself and/or her family and did so in a manner that was reasonable and foreseeable by the Defendants.

---

[9] *Id*. at 0:56 – 1:08.  This apparently suggest that even if the lid is opened while the unit is still pressurized, it will not harm you.

[10] *See* https://www.hippressurecooking.com/

[11] https://www.youtube.com/watch?v=bVA2EqPf0s0 (video with a runtime of 8:30) (last accessed January 9, 2023).

[12] Instant Pot Duo Plus User's Manual, pg. 22.

27.     However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that it failed to properly function as to prevent the lid from being rotated, opened, or removed with normal force while the unit remained pressurized, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

28.     Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.     Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.     Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31.     Defendants knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public.  Nevertheless, Defendants continues to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff and others like her.

32.     As a direct and proximate result of Defendants' intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiff.

33.    Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### INDIANA PRODUCT LIABILITY ACT

34.    Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

35.    At all times relevant herein, Defendants were in the business of designing, manufacturing, marketing and selling the pressure cooker to consumers such as Plaintiff.

36.    As designers, manufacturers, and sellers of the pressure cooker, Defendants are liable to Plaintiff for her injuries and damages under Indiana law as:

a.    Plaintiff was harmed by the defective condition of the pressure cooker which permitted the lid to detach while the unit was still pressurized, causing the contents to explode out of the pressure cooker and causing Plaintiff severe burn injuries;

b.    The defective condition existed at the time it was distributed or sold by Defendants;

c.    Plaintiff was a foreseeable user or consumer of the pressure cooker;

d.    Defendants was in the business of selling the pressure cooker; and

e.    The pressure cooker reached the Plaintiff in the condition it was sold.

37.    As designed and manufactured, the pressure cooker was in a defective condition because at the time it was sold or otherwise distributed by the Defendants it was in a condition (a)

not contemplated by reasonable persons among those considered expected users or consumers of the pressure cooker; and (b) that was unreasonably dangerous to the expected user or consumer when used in a reasonably expectable way of handling or consumption.

38.     As labeled, the pressure cooker was defective because Defendants failed to properly package the pressure cooker to give reasonable warnings of danger about the product and Defendants failed to give reasonably complete instructions on the proper use of the pressure cooker when the Defendants by exercising diligence, could have made such warnings or instructions available to Plaintiff.

39.     Defendants are strictly liable to Plaintiff for any manufacturing defect which permitted the pressure cooker to be distributed or sold in the defective condition.

40.     Defendants failed to exercise reasonable care under the circumstances in designing the pressure cooker which permitted the pressure cooker to be distributed or sold in the defective condition and are liable for Plaintiff's resulting injuries and damages under Indiana law.

41.     Defendants failed to exercise reasonable care under the circumstances in providing the warning or instructions for the pressure cooker which permitted the pressure cooker to be distributed or sold in a defective condition and are liable for Plaintiff's resulting injuries and damages under Indiana law.

42.     As a direct and proximate result of the defective condition of the pressure cooker, Plaintiff sustained injuries and damages for which Defendants is liable under Indiana law.

## COUNT II
## BREACH OF EXPRESS WARRANTY

43.     Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

44.     Defendants expressly warranted to consumers, including Plaintiff, that the pressure cooker was safe for ordinary use.

45.     Defendants expressly warranted to consumers, including Plaintiff, that pressure would not build in the pressure cooker unless and until the lid was shut correctly and was sealed.

46.     Defendants expressly warranted to consumers, including Plaintiff, that once pressure increases in the pressure cooker, the lid cannot be opened.

47.     Defendants expressly warranted to consumers, including Plaintiff, that the lid to the pressure cooker will not unlock until all the pressure is released from the pressure cooker.

48.     Defendants breached its express warranty to Plaintiff as, unbeknownst to Plaintiff: (a) the pressure cooker can become pressurized if the lid is not shut correctly and no seal is formed; (b) the lid to the pressure cooker can be removed or otherwise become detached while the pressure cooker is pressurized.

49.     As a direct and proximate result of the defective condition of the pressure cooker, Plaintiff sustained injuries and damages for which Defendants is liable under Indiana law.

## COUNT III
## PUNITIVE DAMAGES

50.     Plaintiff incorporates by reference all preceding paragraphs and allegations of the Complaint as though fully set forth herein.

51.     Defendants falsely represented and expressly warranted to its consumers, including Plaintiff, that the pressure cooker possessed and maintained a number of "safety features."

52.     Defendants knew the pressure cookers contained dangerous defects which allowed the lid to open while still pressurized, and Defendants knowingly subjected its consumers to the risk of serious injury as a result of the defect.

53. Defendants made knowing misstatements and omissions about the pressure cooker's lid locking feature.

54. Defendants have knowingly permitted the defective pressure cookers to remain on the market and in use by hundreds of thousands of consumers despite Defendants' knowledge of the defective and unreasonably dangerous condition of the pressure cooker.

55. Defendants' conduct in knowingly permitting the defective pressure cookers to remain on the market and in use by hundreds of thousands of consumers despite Defendants' actual knowledge of the defective and unreasonably dangerous condition of the pressure cooker amounts to clear and convincing evidence that Defendants acted with malice, fraud, gross negligence or oppressiveness which was not the result of mistake of fact or law, honest error or judgment, mere negligence or other human failing.

56. Defendants subjected other persons, including Plaintiff, to probable injury with an awareness of such impending danger and with heedless indifference to the consequences by knowingly permitting the defective pressure cookers to remain on the market and in use by hundreds of thousands of consumers despite Defendants' actual knowledge of the defective and unreasonably dangerous condition of the pressure cooker.

57. As a result of Defendants' conscious disregard for the likely injurious consequences of their course of conduct, Plaintiff sustained injuries and damages entitling her to an award of punitive damages against Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, including punitive damages, to which she is entitled by law, as well as all costs of this action, interest and

12

attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

    a.  judgment for Plaintiff and against Defendants;

    b.  damages to compensate Plaintiff for her injuries, economic losses, and pain and suffering sustained as a result of the use of the Defendants' pressure cookers;

    c.  pre and post judgment interest at the lawful rate;

    d.  punitive damages on all applicable Counts as permitted by the law;

    e.  a trial by jury on all issues of the case;

    f.  an award of attorneys' fees; and

    g.  for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Dated: <u>March 25, 2024</u>

**COHEN & MALAD, LLP**

<u>*/s/ Lynn A. Toops*_____</u>
Lynn A. Toops, Esq. (No. 26386-49)
Amina A. Thomas, Esq. (No. 34451-49)
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

*In association with:*

**JOHNSON BECKER, PLLC**

<u>*/s/ Adam J. Kress, Esq.*</u>
Michael K. Johnson, Esq. (MN #0258696)
Kenneth W. Pearson, Esq. (MN #016088X)
Adam J. Kress, Esq. (MN #0397289)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (f)
mjohnson@johnsonbecker.com

kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff***